UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

U.S. PREMIUM FIN.,

Plaintiff,

v.                                                          Civil No. 19-1513 (GAG)

FIVE DEV. HOLDINGS, INC.,

Defendant.

## MEMORANDUM ORDER

Presently before the Court is Five Development Holdings, Inc., ("Five Development" or "Defendant")'s motion for reconsideration of the Court's Order granting U.S. Premium Finance ("U.S. Premium" or "Plaintiff")'s motion to lift the stay of litigation. (Docket Nos. 49-51). Plaintiff opposed. (Docket No. 53). With leave of Court, Defendant replied and Plaintiff sur-replied. (Docket Nos. 56; 61). Federal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332.[1] For the ensuing reasons, the Court **GRANTS** Defendant's motion for reconsideration at Docket No. 51.

### I.   Background

On May 28, 2019, U.S. Premium—a division of Ameris Bank—filed this suit against Five Development and affiliates alleging breach of contract claims from two insurance financing agreements. (Docket No. 1). On March 24, 2020, the Court denied Five Development's motion to dismiss for failure to state a claim, FED. R. CIV. P. 12(b)(6), and to join an indispensable party, FED. R. CIV. P. 12(b)(7). (Docket No. 32). Nevertheless, the Court stayed the case because any recovery

---

[1] This case implicates the Court's diversity jurisdiction and therefore, the Court applies the substantive law of the Commonwealth of Puerto Rico. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

**Civil No. 19-1513 (GAG)**

from the unearned premium claims before the administrative forum would affect recovery in this case. (Docket Nos. 32 at 9). Furthermore, the Court ordered the parties to keep it informed of any progress made. Id. at 33.

Over the span of a year, the parties jointly filed seven status reports. (Docket Nos. 38-39; 41; 43-45; 48). The status reports informed that U.S. Premium filed—on behalf of Five Development[2]—four administrative claims for unearned premiums with the Liquidator in Real Legacy Assurance Co. ("Real Legacy")'s liquidation proceeding[3] before the Commonwealth of Puerto Rico's Court of First Instance and subsequently with the Puerto Rico Miscellaneous Insurance Guaranty Association ("PRIGA"). As per the joint status report received on October 5, 2020, the parties informed the Court that U.S. Premium received four checks from PRIGA purporting to serve as total & full payment of all administrative claims. (Docket No. 44). However, the amount received ($364,764.00) differed from the amount claimed because PRIGA issued payment to U.S. Premium in accordance with its obligation under Chapter 38 of the Commonwealth of Puerto Rico's Insurance Code, Law No. 77 of June 19, 1957, ("Law 77"), P.R. LAWS ANN. tit. 26, § 3801, *et seq.*, and the statutory limits provided therein. (Docket No. 53 ¶ 9). Consequently, U.S. Premium deposited the four checks as partial payment and petitioned for a lift of stay to recoup the deficiency. (Docket Nos. 53 ¶ 10; 49 ¶¶ 8-9).

**II.     Discussion**

Defendant's motion for reconsideration requests the Court to reassess its order lifting the stay of litigation and to keep the stay in place until administrative proceedings conclude. (Docket

---

[2] The Court noted in its Opinion and Order denying the motion to dismiss, "the contract plainly stipulated that in case of default payment US Premium, under its power of attorney, could assert a claim against Real Legacy in favor of Five Development for unearned premiums and that Five Development shall remain liable for any deficiency not covered by the same." (Docket Nos. 32 at 7; 1-1; 1-2).

[3] P.R. Ins. Comm'r v. Real Legacy Assurance Co., Inc., Civil No. SJ-2018-08272 (P.R. Jan. 18, 2019).

No. 51 ¶ 6). Although U.S. Premium received four checks on account of the administrative claims for unearned premiums from PRIGA, Defendant alleges that U.S. Premium did "not mention the status of the remaining amounts claimed in the administrative proceeding." Id. ¶¶ 3-4, 6. Thus, Defendant argues that the case ought to be stayed because U.S. Premium has not exhausted all mandatory administrative remedies. Id. ¶ 8; see also Olympic Auto. & Accessories v. P.R. Power Auth., 68 F. Supp. 3d 300, 306-07 (D.P.R. 2014) (citing McKart v. U.S., 395 U.S. 185, 193 (1969)).

Plaintiff responded reaffirming that all four of U.S. Premium's administrative claims for unearned premiums have been exhausted because PRIGA delivered four checks and that it "does not have any further claims before the [Real Legacy] liquidation proceeding." (Docket No. 53 ¶¶ 12, 14).

Defendant replies that Plaintiff has not exhausted all administrative procedures because U.S. Premium has yet to receive payment from the Liquidator in the Real Legacy liquidation proceeding.[4] (Docket No. 56 at 4-7). Defendant states that under Law 77, P.R. LAWS ANN. tit. 26, § 4035(7)(a), any claim or portion of it not covered by PRIGA becomes a claim against the Insurer's assets (Real Legacy) in the liquidation proceeding. (Docket No. 56 at 4-5). Law 77 provides,

> [t]he claimant waives any right to claim the assets of the insured party to the extent of the coverage or policy limits provided by the insurer and agrees that, to the extent of said coverage or limit, *his/her claim against the insured party shall be satisfied solely from distributions paid by the liquidator on the claim and any payment that the guaranty association may pay on account of the claim*, except as provided in this section.

P.R. LAWS ANN. tit. 26, § 4035(7)(a) (emphasis added). Thus, Defendant argues Plaintiff has not exhausted all administrative remedies because Plaintiff needs to recover its deficiency in the administrative proceeding of Real Legacy's liquidation instead of this Court, unless Plaintiff signed

---

[4] U.S. Premium filed its administrative claims with the Liquidator who, in turn, passed them forward to PRIGA pursuant to Law 77, P.R. LAWS ANN. tit. 26, § 3818. (Docket Nos. 1 ¶¶ 24-25; 1-9; 1-10; 56 at 4).

a full release of its claims opting out of payment from the Liquidator. (Docket No. 56 at 2; 4-7). Otherwise, Defendant asserts that the deficiency of the four claims for unearned premiums must be administratively processed pursuant to Law 77's insurer insolvency claim priority statutes under P.R. LAWS ANN. tit. 26, § 4039, and the Commonwealth Court's order of liquidation under P.R. LAWS ANN. tit. 26, §§ 4036, 4040, in response to the Commissioner of Insurance's petition to change Real Legacy's administrative status.[5] (Docket No. 15-1).

Defendant notes that Plaintiff can find the remaining administrative procedures in the Commonwealth's Court order of liquidation. (Docket No. 15-1). According to the order of liquidation, the Liquidator notifies each claimant about the result of its evaluation. Id. 1 ¶ 54 at 20. If the Liquidator accepts the claim, then it must also inform the claimant about his class number in the priority of distribution and the amount accepted; but if the Liquidator denies the claim, then it must provide a reason for the claim's denial. Id. ¶¶ 55-56 at 20; see also P.R. LAWS ANN. tit. 26, § 4040. As a denied claim, Defendant alleges that the "claimant would then have 'the right to submit an objection or reconsideration to the Liquidator within thirty (30) days after the mailing of the notice.'" (Docket Nos. 15-1 ¶¶ 56, 58 at 20; 56 at 5-6); see also P.R. LAWS ANN. tit. 26, § 4036.

Defendant remarks that the evidentiary record does not show that Plaintiff agreed to a full release of its administrative claims or that the Liquidator notified Plaintiff in writing that the remaining claimed amounts were denied. (Docket No. 56 at 6). Moreover, "it is not in dispute that the Liquidator concluded in a letter to PRIGA dated June 20, 2020, that U.S. Premium was justified in receiving a reimbursement in unearned premiums in the amount of $509,696.00, an amount

---

[5] The Insurance Commissioner stated in his petition that Real Legacy increased its capital loss from $71,105,210 in June 2018 to $123,304,312 in November 2018 and had to be liquidated because it lacked the necessary capital to continue operations despite rehabilitation efforts. (Docket 15-1 at 1).

4

higher than what was paid so far by PRIGA." (Docket No. 56 at 6-7). Thus, "Plaintiff still has a remaining balance of $221,689.48 in unearned premiums to claim from the Liquidator." Id. at 6.

Plaintiff sur-replies claiming the Court should deny Defendant's request to maintain the stay because PRIGA already paid the maximum allowed by statute for covered claims of unearned premiums on the four claims U.S. Premium filed on behalf of Defendants. (Docket No. 61 at 8). Plaintiff advances that if additional administrative remedies exist, "then Defendants should bear the risk of time, uncertainty, and costs of pursuing such remedies, not U.S. Premium." Id. Plaintiff highlights that U.S. Premium waited around a year until it obtained partial payment "on account of its derivative claims for unearned premiums." Id. at 4. U.S. Premium argues that having to pursue additional remedies before the liquidation proceeding just so that it can "be able to collect from Defendants the amount they owe simply shifts the contractually bargained risks, costs and burdens of repayments from Defendants to U.S. Premium." Id. at 2-3. Once Plaintiff recovers the debts owed from Defendant's default of their financing agreements, "the remedies (if any) Defendants argue U.S. Premium has available against Real Legacy will revert to them, who can then bear the risk of collection against the insolvent insurance company." Id. at 3.

According to the terms of the two financing agreements, Plaintiff alleges Defendant "promised and agreed to be primarily liable for the repayment of the amounts due to U.S. Premium, therefore, being recourse loans." (Docket Nos. 61 at 2; 1-1; 1-2). A recourse loan is a "loan that allows the lender, if the borrower defaults, not only to attach the collateral but also to seek judgment against the borrower's (or guarantor's) personal assets. See Recourse Loan, BLACK'S LAW DICTIONARY (11th ed. 2019). Plaintiff argues that since the insurance financing agreements are recourse loan agreements, then U.S. Premium should not be prejudiced by the undue hardship of

5

**Civil No. 19-1513 (GAG)**

having to collect from Five Development's collateral and should be allowed to proceed directly against Five Development instead. (Docket No. 61 at 2).

The Court disagrees. U.S. Premium must exhaust all available avenues of administrative review before continuing litigation, including first recouping the deficiency from the Liquidator in the administrative proceeding of Real Legacy's liquidation. See Olympic Auto. & Accessories, 68 F. Supp. 3d at 306-07.

A "motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under FED. R. CIV. P. 59(e) if it seeks to change the order or judgment issued." Villanueva-Méndez v. Nieves Vázquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) aff'd, 440 F.3d 11 (1st Cir. 2006). Rule 59(e) motions are granted "when the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 9 (1st Cir. 2015) (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)) (citations omitted).

Exhaustion of administrative remedies "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Olympic Auto. & Accessories, 68 F. Supp. 3d at 306 (citing McKart, 395 U.S. at 193). The main purpose of exhausting available administrative remedies is to avoid premature interruption of the administrative process because it is generally inefficient to permit a party to seek judicial recourse without first exhausting his administrative remedies.[6] Olympic Auto. & Accessories, 68 F. Supp. 3d at 306-07 (citing McKart, 395 U.S. at 194). The Supreme Court has concluded that, by and large, concerns regarding efficiency militate in favor of, rather than against, strict application of the

---

[6] "It is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." McKart, 395 U.S. at 193.

exhaustion doctrine. Olympic Auto. & Accessories, 68 F. Supp. 3d at 307 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992); McKart, 395 U.S. at 195).

The First Circuit has emphasized the importance of exhausting administrative remedies. Portela-González v. Sec'y of the Navy, 109 F.3d 74, 77-79 (1st Cir. 1997); Ezratty v. Comm. Of Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981). Disregarding available administrative processes thrusts parties prematurely into overcrowded courts and weakens an agency's effectiveness by encouraging end-runs around it. See McCarthy, 503 U.S. at 145; McKart, 395 U.S. at 195. As such, exhaustion is mandatory, which means that a party *must* exhaust all available avenues of administrative review "regardless of the particular relief offered (or not offered) through a given set of administrative procedures." Olympic Auto. & Accessories, 68 F. Supp. 3d at 307 (citing cases). Exhaustion of remedies "has a decidedly procedural emphasis." Id. (citing Booth v. Churner, 532 U.S. at 731, 739 (2001); Johnson v. Thyng, 369 Fed. Appx. 144, 146–47 (1st Cir. 2010)). That is, what must be exhausted is the process, not the form of relief. Olympic Auto. & Accessories, 68 F. Supp. 3d at 307 (citing Booth, 532 U.S at 738).

Here, U.S. Premium filed four administrative claims for unearned premiums with the Real Legacy liquidation proceeding. (Docket No. 1 ¶¶ 22-25; 1-9; 1-10). While it received partial payment from PRIGA, U.S. Premium has yet to receive "any payment from the liquidator of Real Legacy, and it is uncertain whether U.S. Premium will ultimately be able to recover any amounts from Real Legacy once liquidated." (Docket No. 1 ¶ 26). Essentially, U.S. Premium seeks to cut the administrative process in half.

Obtaining payment from PRIGA is the first half of the administrative process that U.S. Premium itself commenced and receiving payment from the Liquidator is the second half. Nothing on the record suggests the Liquidator has denied U.S. Premium's claims for the deficiency. On the

**Civil No. 19-1513 (GAG)**

contrary, according to a letter dated June 20, 2020, the Liquidator proclaimed that U.S. Premium is entitled to $509,696.00 from Real Legacy's liquidation. (Docket Nos. 56 at 6-7; 61 at 2). Consequently, the Liquidator recommended PRIGA pay the maximum amount statutorily allowed ($364,764.00) with the intention that the Liquidator would cover the difference once it makes its recommendation to the Commonwealth's Court in the administrative proceeding. See P.R. LAWS ANN. tit. §§ 4040. Thus, the Court holds U.S. Premium must exhaust all available administrative processes, such as those with the Liquidator. See Olympic Auto. & Accessories, 68 F. Supp. 3d at 307.

### III.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion for reconsideration at Docket No. 51 of the Court's Order at Docket No. 50 lifting the stay of litigation. Plaintiff's claims against Defendants are hereby **STAYED** while the remaining administrative processes with the Liquidator are exhausted.

**SO ORDERED.**

In San Juan, Puerto Rico this 29th of March 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge